Scribner, J.
This is a petition in error brought tojreverse a judgment rendered by the court of common pleas in an action in which the plaintiff in error was plaintiff and the defendant in error was defendant.
Owing to the peculiar character of the questions involved, and in order to a fair understanding of the grounds upon which we base our disposition of the case,H will read the material portions of the petition.
The plaintiff, Gable,after setting out in the petition that the city of Toledo is a municipal corporation of the first class, and that Huron street is one of the public streets of the city, and after reciting the duty of the city to keep the streets in a safe condition for travel — for general use as a street — -says:
“Yet said city, in violation of its duty as aforesaid, authorized and permitted a large hole and excavation to be dug and made, and a large mound of earth to be placed near the same in the travelled portion of said street, to-wit, on that part of the said Huron street between Jefferson and Monroe streets, and negligently and with full knowledge of the existence thereof, to remain there for a long time without placing around or at the same any safeguards, railings or lights to give notice of said excavation,mound or obstruction, and to prevent persons who with their property aforesaid might use or travel upon said street, from falling upon or into the same, and thereby being damaged and injured, of which there was great and evident danger.
“This plaintiff, upon the night of the day aforesaid, was lawfully driving a horse with harness and a buggy in which this plaintiff was seated (which horse, harness and buggy were the property of the plaintiff and of the value of |200 and above) along said street in the vicinity of said excavation and mound,and without any knowledge or notice thereof,and without being able to see the same by reason of the darkness of the night, when, without negligence and in the use of all due care, his said horse fell over said mound' *517 and into said excavation, and by reason thereof said horse-was killed, the axle of said buggy was broken, and the shafts, wheels and other parts thereof, and also said harness were-greatly damaged,and said harness had to be cut in order to-remove the same and said horse from said excavation; and also this plaintiff was thereby violently thrown from said buggy upon the ground, and two of his ribs were broken, his shoulder was greatly and permanently injured, and his knee and other parts of his body were severely bruised, whereby said plaintiff lost said horse, and said harness and-buggy were greatly damaged, and he became and was for a< long time wounded,sick and disabled, and suffered geat pain and was confined to his house and prevented from attending' to and doing his ordinary business,and was deprived of the-profits thereof, and incurred the liability to pay and did pay large sums of money, together with the sum of three-hundred dollars, for medical and surgical attendance and services and for nursing, care and attendance upon and for himself, in and for the purpose of being cured of his said; wounds and sickness.”
The plaintiff then avers that he gave notice of these facts1 to the city council more than sixty days before the bringing of the action; that they refused to allow any compensation,, and consequently he brought suit against the city to recover damages for this negligence.
The answer admits the existence of the municipality as-charged,and as to Huron street that it was.a public street;, but denies that it-had any knowledge of any excavation or mound having been made, dug or left in said street — of: any mound of earth being placed in the travelled part of said street, and therefore denies the allegations of the petition in that regard, and denies all the other averments of' the petition except that the plaintiff gave notice as stated.
There was a reply filed in the case to this answer, thus-making up the issues to be tried by the court and jury.
There were two trials of this case. On the first trial there was a verdict for the plaintiff, upon which judgment was rendered by the court of common pleas, the case being; *518 taken on error to the circuit court, and that court reversed the judgment of the common pleas, and sent it back for trial.
On the second trial there was a verdict for defendant. A bill of exceptions was takem — 'the motion for a new tiral was •overruled and judgment granted upon the .verdict for the city. The bill of exceptions so taken did not set out the testimony, but set out what it tended to prove as averred in the bill of exceptions, and also set out certain questions that were propounded to one of the witnesses in the case ■and offers to prove on the part of the plaintiff, which offers were rejected by the court; and also set out that a certain juror during the progress of the trial had been guilty of impropriaties which it was claimed vitiated the verdict, and for the matters set out in the oill of exceptions, the plaintiff seeks to reverse the judgment of the court below, the ■overruling the motion for a new trial and the dismissing of his petition.
The bill of exceptions states that ‘"At the January Term, A. D. 1892, of the court of common pleas, before Hon. ■Gilbert Harmon and a jury, evidence was given tending to prove that the defendant had issued a permit to and authorized one Peter Mattimore to dig the excavation described in ■plaintiff’s petition, under and by virtue of the laws and ordinances of the city of Toledo then in force, copies of which permits and ordinances are hereto attached,marked Exhibits ‘A,’ ‘B’ and ‘O’ respectively and made a part of this bill •of exceptions,”
These ordinances are not attached, and for that reason the bill of exceptions is imperfect, at least in that particular; but still, enough remains for us to fairly consider the ■case, and we have proceeded to do so.
“And testimony was also given by plaintiff tending to :show that said excavation was made by said Peter Mattimore under and by virtue of said permit and authority from said city in Huron street. That said Huron street was a ¡public street in the city of Toledo, Ohio, and under the *519 -care and supervision of the defendant. That said excavation was made in said street for the purpose of making a .-sewer connection with the public sewer therein and certain premises abutting thereon, and ■ that said excavation was ■ sixteen feet in depth and three feet in width, and extended from the curb line of said street into the same upwards of ■sixteen feet, and that said excavation had been so dug in -said street for upwards of six days prior to the accident complained of in plaintiff’s petition. And testimony was ■also given by the plaintiff tending to show that the defendant failed and neglected to place or to see that suitable lights and guards were placed in and around said excavation to warn travellers on said street and prevent them from falling therein while travelling thereon on the night of the accident to plaintiff. And plaintiff had also given testimony tending to prove that while driving and travelling on said street in a lawful manner on the 8th day of November, A. D. 1892, and in the night time and after dark of said day, and while exercising due and reasonable care on his part, he fell into said excavation without fault on his •part, and was seriously and permanently injured in and about his person and body. And testimony was given tending to show that the defendant was a municipal corporation ■of the third grade of the first class under the laws of the -state of Ohio,and situate therein. And testimony was also •given tending to prove all the material allegations contained 'in plaintiff's petition herein.”
Now, the bill thus reciting that the proof tended to establish all the material allegations of the petition, and also facts in and of themselves uncontradicted, tended to make ■a clear case of liability on the part of the city, the bill of ■exceptions then proceeds to show that certain questions •were propounded to a witness upon the stand, which were objected to and sustained; that offers were made to prove •the matters to which the questions referred,and these offers were rejected, and that the plaintiff excepted to the action -of the court in these particulars, and by this bill of exceptions preserved whatever rights he had acquired to review the action of the court below. The bill of exceptions then ^proceeds:
*520 “And plaintiff further to maintain the issue on his part offered one Sarah Wilson as a witness and asked heir the following question, to-wit: ‘Do you remember on this night-of the accident of seeing that hole before Mr. Gable went’, into it?’ And in response to the same said witness then and there testified as follows, to-wit: ‘Oh, yes, I saw it-that night; I had to pass right by there to get water; that, is the way I came to see it; and there was no light there;, there was a dirty lamp hung there, a smoked up lamp; you. couldn’t see that they had anything of the kind’. And plaintiff thereupon asked witness, Sarah Wilson, the following question: ‘How many nights before that had it been without a light?’ To which question defendant objected, and the court sustained the objection and ruled out said question, to which action and ruling of the caurt the plaintiff then in due time excepted.”
That question was subject to this objection — which perhaps might be regarded as technical, but nevertheless as a good objection — that it assumed that plaintiff had neglected to place lights there on the evening previous to the-night of the accident. The question is “How many nights before that had it been without a light”. Then the plaintiff made this offer:
“Plaintiff expected and then offered to prove by said question and by said witness and others that no lights, or guards were or had been placed around or near said-excavation for four or five nights immediately preceding-the night of the accident. And plaintiff further to maintain the issue on bis part, asked the said witness, Sarah Wilson,the following question: “You live down there, do-you not?” To which the said witness answered: “Yes, on Huron street.” And plaintiff then and there and for the purposes aforesaid asked the said witness the following-question, to-wit: “Did you see that excavation every evening after dark?” To which question said witness then and-there answered: “Yes: I most always had to bring water- and would see it.” And further to maintain the issues on his part plaintiff asked the said witness, Sarah Wilson, the-following question: “What condition was it in as to guards* during the time this excavation was being dug?” To which *521 question defendant objected and the court sustained the objection, and the plaintiff then and there excepted to the said ruling of the court. And plaintiff then and there expected •and offered to prove by said witness and others that on •every night other than that on which the injury took place, except the first two nights that this work was in progress, .there were no lights about that work or guards to prevent •people from falling into the said excavation; that on other •nights than the one on which the injury happened there •were no lights or guards about that; all of which the court refused' to allow the plaintiff to do, to which ruling and action of the court the plaintiff then forthwith duly excepted.”
The principal questions in the case arise upon these rulings of the court — ms to whether or not the court erred in ■excluding testimony offered by the plaintiff upon the trial tending to show that on certain nights previous to that upon which the accident complained of occurred,the premises were left unguarded and unlighted, with no guards to protect the passers by from falling into the excavation — mo light to warn them of the danger to which they were subjected in passing along the street in the vicinity of the excavation.
Now it is to be remarked that under the statements contained in this bill of exceptions, viz.: that the testimony tended to prove all the material allegations of the petition, •tended to prove that there was an excavation extending from the curb line of the street some sixteen feet into the street, of some twenty feet in depth — it was utterly immaterial as to whether the lights had been placed there the previous night or not. It is entirely immaterial whether or not the city had knowledge of the condition of things which[it[is averred the testimony tended to prove, on the night when the accident occurred, which resulted in the accident offwhich the plaintiff complains; because, from these [statements in the record, plaintiff was bound from the^nature^of'j the ex *522 cavation to see to it that it was kept in a proper condition,, that reasonable diligence and care were exercised to protect, the public from the danger of falling into the excavation; so,, whether there were lights there on the previous night or not — -whether there were guards there on the previous night or not, is an immaterial issue or question in the case.
If it were a case in which it were necessary to bring to the-city knowledge of the dangerous condition of the street, then the testimony would clearly have been competent and should have been admitted. The authorities cited in the biief of: counsel for the plaintiff in error, as well as the generally recognized principles of law applying in the case, would permit testimony to be given tending to show, if it were a. case in which the city were not bound to iook after the safety of the streets, that the city had knowledge of this-condition, by showing that for several nights previously there had been no lights and no guards; but it was not a-case, according to the facts shown in the bill of exceptions, in which it was necessary to show that the city had previous-knowledge of these excavations and of the dangerous condition of the street. The record states, as I have already said, that this dangeorus excavation was made there with the authority, consent, and the permission of the city au. thorities. They were authorizing, permitting and consenting to an excavation upon a public street which was necessarily dangerous to the public. They were bound to see to it that it was kept properly guarded and in a proper condition to protect the public against loss. It was not necessary, in order to entitle the plaintiff to recover, that he-should show that they had knowledge that the excavation was being allowed to remain in a dangerous condition; it was not necessary for them to show that on previous nights-it had been left unlighted and unguarded, in order to fix upon the city liability for an accident which occurred upon that night; because,as I have said,they were bound to see to- *523 it, they having authorized this dangerous excavation in the street, that it was kept properly guarded, and that the public were properly protected against the dangers incident to an excavation which by their authority and consent was being made in a public street — a place which the law required them to keep in a safe condition.
There are several cases in which this doctrine is*held in Ohio, notably in 38 Ohio St., 50; 40 Ohio St., 465; 47 Ohio St., 210; 27 L. B., 91 — a case decided by the supreme court which went from Oleveland.
In the case in 41 Ohio St., 465, Circleville v. Neuding, the syllabus thus states the law:
“Where a city contracted for the construction of a cistern 18 feet wide and 24 feet deep, in a street, and before the cistern was completed a horse fell into it and was killed, for want of sufficient protection around and over the excavation, to guard animals in the proper use of the street from danger. Held: That the city was liable for the loss of the horse, although it did not reserve or exercise any control or direction over the manner of doing th6 work, except to see that it was done according to specifications which were a part of the contract.”
In the opinion this is said:
“It is contended on behalf of the city that it is not liable for the loss of the horse, because the cistern was in process of construction by an independent contractor when the injury occurred. The relation between the city and Brandt (that is the contractor) was clearly that of employer and independent contractor, and the rule is generally that for injuries occurring in the progress of work carried on by parties in that relation, the contractor alone is liable. But this liability is limited to those injuries which are collateral to the work to be performed, and which arise from the negligent or wrongful act of the contractor or his agents or servants. Where, however, the work to be performed is necessarily dangerous, or the obligation rests upon the employer to keep the subject of the work in a safe condition, the rule has no application. This distinction has been taken *524 in this state in a number of cases *■ * * • In this case the cistern contracted for was to be built in a street, and to be 18 feet wide and 24 feet deep. Such an excavation in a street, unless protected to guard persons and animals using the street from falling into it, was necessarily dangerous. The city was under the statutory obligation at the time of the accident to keep its streets open, in repair, and free from nuisance, and it could not cast this duty upon a •contractor, so as to relieve itself from liability to one who should receive an injury. It is primarily liable for an injury resulting from such dangerous place in a street. If it has required the contractor to assume the risk of such damage, it may have a remedy against him. But the public in the use of the streets may rely upon the legal obligation of the city to keep them free from dangerous places, or if such places become necessary to be made in the course of an improvement or work necessary or proper for the city to do, that it shall so guard them that no injury shall result in the ordinary use of the street.”
This same doctrine is stated in very strong terms in the case of R. R. Co. v. Morey, 47 Ohio St., 207, On page '216, it is said:
‘‘There was evidence, therefore, from which the jury could find that the railroad caused this ditch to be dug in the particular manner that the work was done, and if the jury so found, it was liable for the consequences, whether it did so by its own servants or by the hand of an independent contractor.”
(There was a ditch dug by the railroad company in a public street, with the consent and concufrence of the public authorities, for the purpose of laying pipe, and an accident occurred.)
It was the duty, therefore, according to the established doctrine of the supreme court of this state, of the city, when it issued to the parties named in this record the permit to make this excavation, and they went forward to make it, to guard the excavation against danger to these parties. It was bound to see to it that this necessarily dangerous *525 work was so done as to protect the party from liability to danger in the use of the street, and, as I have already said, it mattered not, so far as this liability of the city was concerned, whether it knew that guards had not been provided, or lights had not been placed there, to warn and guard the public — it was bound to know whether it was done or not. We therefore think it was entirely immaterial to the case to show that this excavation had been left unlighted and unguarded for several nights previous to this accident.
The testimony, as I have said, is not set out in the record. No part of the testimony introduced on the part of the defendant is set out in the record; but we are bound to presume, in the absence of a showing in the record, that the testimony on the part of the defendant overcame that introduced by the plaintiff as to the facts upon which the plaintiff based his claim for a recovery; and for this reason we cannot assume that the verdict of the jury was contrary fo the evidence, or that the court erred in overruling the motion for a new trial.
As to the objection that a juror had acted improperly during the progress of the trial: it appears from affidavits introduced in the case that while the trial was in progress some little sparring had occurred between the court and a witness, and perhaps one or more of the counsel may have been slightly involved in the disagreement, But however that may be, the court took action upon the matter; and subsequently, during a recess, one of the jurors conversed with' counsel for the plaintiff in the case,and made remarks tending to show that he felt a little bit disturbed at the manner in which the court had acted, and he expressed himself that the court had acted rather hastily in its ruling and action with regard to the trouble with the witness in the case; but he said nothing as to the merits of the controversy in any way, shape,or manner; but whatever he did say, had refer *526 ence to the trouble which occurred during the trial; but it nowhere appears that this conversation, although it took place with counsel for plaintiff during the trial, was reported to the court, or that any action of the court was requested upon the matter. The court was not advised until after the trial had taken place, so far as the record shows, of this conversation, although it was known to plaintiff’s counsel that it had taken place with him. It does not appear that the plaintiff or his counsel called the matter to the attention of the court, or that any action on the part of the court was requested. For that reason we think it is too late, if it would have been any ground for interference — that it is too late, after a verdict had been returned in the case, to make this matter any cause for interfering with the verdict.
The judgment of the court of common pleas will therefore be affirmed.